## Comings, Apt., *vs.* Wellman, Adr.

A father conveyed lands to his son in fee, by deed dated August 26, 1826, in consideration of love and affection, and the son, by indenture dated August 28, conveyed to his parents an estate therein for their lives, describing the land as "being the same that the said J. W. *deeded* to the said J. B. W., August 26, 1826." By indenture dated August 29, 1826, the parents conveyed the premises to the son, to hold during their lives, in consideration of which he covenanted to maintain them.

*Held*, after the decease of the parents, the instruments having been executed at the same time, that the conveyance to the son was to be deemed an advancement to the extent only of the value of the reversion after the determination of the life estate, and that this value should be ascertained by deducting from the value of the land, at the date of the deed, the sum of its annual value, discounting the interest thereon from the end of each year, during the existence of the life estate.

*Held*, also, that the recital in the indenture of the date of the deed did not estop the son from showing that the instruments were all executed at the same time.

APPEAL from the decree of the judge of probate for this county.

James Wellman, by deed bearing date on the 26th day of August, 1826, conveyed certain land in fee to his son, Joshua B. Wellman. The consideration mentioned in the deed was "the parental love, good will and affection which I have and do bear unto my son, Joshua B. Wellman."

James Wellman and Alethea, his wife, of the one part, and Joshua B. Wellman on the other part, executed an indenture, bearing date the 28th day of August, 1826, by which Joshua let to the said James and Alethea the farm on which they then lived, "being the same that the said James Wellman *deeded* to the said Joshua B. Wellman, August 26th, 1826," to hold for their and each of their natural lives. The lessees covenanted that in consideration of the use and improvement of the farm, the lessor should after their decease take peaceable possession of the premises to himself.

By another indenture, bearing date on the 29th day of August, 1826, and purporting in the premises to be made between James and Joshua only, but executed by Alethea also, James "doth let and release" to Joshua the farm aforesaid, and describes it as "the same that the said James Wellman *deeded* to the said Joshua B. Wellman, August 26th, 1826," and which Joshua leased to James, August 28th, 1826, to hold during the natural life of the said James and his wife Alethea, for his own use and benefit. Joshua covenants that he will deliver to the lessors one third part of the produce of the farm, and one third part of the increase or profit arising

from the stock, or otherwise that he will support them in a proper manner during their lives.

Upon the facts disclosed by the above papers, the judge of probate decreed that the deed of the land to Joshua was not to be regarded as an advancement to him, and that, in the distribution of the estate of James, both he and his wife being dead, Joshua should not be charged with the value of the land.

From this decree an appeal was taken by Comings, the husband of a daughter of the deceased, of whose estate Joshua, the appellee, is the administrator.

*Snow*, for the appellant. The administrator should be charged with the value of the land conveyed by the deed of the 26th of August, because of the consideration, which is love, good will and affection, and because it is distinct from and independent of the other papers in the case.

The several instruments were not between the same parties, nor is the subject matter of them the same, nor did the parties ever intend that they should be regarded as the same transaction.

The defendant is estopped by the allegations in the lease and release from showing that the deeds were made on the same day. The words, "being the same," are an allegation. *Cutler* vs. *Dickinson*, 8 *Pick.* 386; *Cong. Soc.* vs. *Perry*, 6 *N. H. Rep.* 164; 2 *Black. R.* 295, *Gibson* vs. *Hunter*.

The nature of the conveyance cannot be changed by showing a different consideration from that expressed in the deed. 1 *Mass.* 527, *Scott* vs. *Scott;* 10 *Mass.* 437, *Whitman* vs. *Hapgood;* 1 *Johns.* 140, *Schemerhorn* vs. *Vanderheyden;* 3 *Johns.* 508, *Howes* vs. *Barker;* 7 *Johns.* 341, *Maigley* vs. *Hauer;* 14 *Johns.* 210, *Shephard* vs. *Little;* 2 *W. Bl.* 1249, *Preston* vs. *Merceau;* 1 *Vesey* 128.

The defendant is estopped, by the reference in the leases,

to a specific date, the 26th of August, 1826, from showing a different day.

*Leland*, for the defendant. Although the deed and lease bear different dates, they were all executed and delivered at the same time, and concerned the same transaction, and they should all be construed together, as making one contract. If so, they show a good and sufficient consideration,—the maintenance and support of the father and mother during their natural lives,—and this fact we show by the subscribing witnesses.

A party is not estopped by his deed from showing that it was made at a time different from its date.   3 *St. Ev.* 1046 ; 4 *Bac. Abr.* 58 ; *Cro. Jac.* 264 ; 4 *East* 477.

Deeds take effect from their delivery, and not before.   5 *N. H. Rep.* 77 ; 8 *Mass.* 230.   We may, therefore, prove that the papers were all executed at the same time.   To constitute an estoppel, the matter and words must be material ; but merely descriptive words and circumstances do not make an estoppel.   5 *Bac. Abr.* 428.   The date is not material : only the execution and delivery are so.   The references in the leases are to the substance of the deed therein set forth, as material to connect the transaction, and not to the date of the deed.   The date is mere description, to identify the deed ; and whatever dates the instruments may bear, they operate only from the delivery, and the effect of the reference is controlled by the delivery.   The word *deeded* on such a day, refers to the same deed which took effect from such execution and delivery.   The reference is not to a deed executed and delivered on such a day, but *deeded* means *dated* on such a day.   The word *deeded* has no legal meaning, but is merely descriptive of a certain deed.

If, then, the instruments were executed and delivered at the same time, between the same parties, and relate to the same matter, they form only one contract, and should be construed together.   7 *Mass.* 496 ; *Ch. on Cont.* 23 ; 13

*Mass.* 51 ; 1 *N. H. Rep.* 39 ; 4 *Mass.* 330 ; 3 *Mass.* 138, *Newall* vs. *Wright ;* 1 *N. H. Rep.* 73.

The instruments taken together clearly show the consideration to be love and good will, and *also* the support of James and his wife during their lives.   All idea of advancement is thus repelled ; for if there is any other consideration, however small, besides love and affection, the statute provision as to advancements does not apply.   *Scott* vs. *Scott,* 1 *Mass.* 526.   James conveyed to Joshua a present interest, which Joshua could then enjoy.   What object, then, had Joshua to lease the land back to his father, if it were not part of the contract that he should support his parents.   The lease points out the mode in which the support shall be furnished, and after the necessity for it shall have ceased the property is to belong to Joshua.   It is an unreasonable construction that he should give the use of the farm to his parents, when he had a present interest free from any such charge.

GILCHRIST, J.   The statute provides in substance that any deed of lands and tenements, made by a person in consideration of love or affection, to one who shall become his heir, shall be deemed and taken, if the grantor shall die intestate, to be in advancement of the share of such heir. James Wellman, on the 26th day of August, 1826, conveyed the land in question to his son, Joshua B. Wellman, in consideration, as the deed expresses it, of his " parental love, good will and affection."   If there were nothing more in the case, the land thus conveyed must be regarded as an advancement to Joshua, as it clearly is comprehended within the statute.   *N. H. Laws* 353, *Ed. of* 1830.

On the 28th day of August, Joshua leased the premises to his parents for their lives and that of the survivor, to hold the same " for their own use, benefit and improvement," in consideration of which they covenant that at the expiration of the term he shall take peaceable possession of the premises to himself.

By an instrument bearing date on the 29th of August, James leased the premises to Joshua for his own life and that of his wife, in consideration of which Joshua covenanted that he would support them.

After the execution of these instruments, if they can all be construed as forming one transaction, the title stood as follows, unless there be something in the case to bring us to a different result : Joshua had a fee in the premises, subject to an estate for life in his parents. They conveyed that life estate to him, in consideration of which he agreed to maintain them. There was, therefore, a valuable consideration for the conveyance to him of the life estate ; and the only interest for which there was no other consideration than love and affection, was the remainder in fee after the determination of the estate for life.

But the appellant contends that the instruments do not constitute one transaction, because they appear to have been executed on different days, and that Joshua is estopped, by the recital in the indenture of the 28th of August, that the land was *deeded* on the 26th of August, from showing that it was executed on a different day ; and he contends that, without this recital, the dates of the instruments are conclusive evidence of the time of their execution.

But the date is no part of the substance of a deed, and need not be inserted. 2 *Johns.* 234, *Jackson* vs. *Schoonmaker.* A party is not estopped from showing that a deed was executed at a time different from its date. 4 *Johns.* 233, *Jackson* vs. *Bard.* But in the absence of all evidence to the contrary, it will be presumed to have been executed and delivered when it bears date. 5 *Wend.* 533, *Jackson* vs. *Hill.* The delivery of a deed subsequent to the date of it, may always be proved, whenever the facts will authorize it. *Fairbanks* vs. *Metcalf,* 8 *Mass.* 240. These principles are generally recognized, and they answer the position of the appellant, that the dates are conclusive. In relation to the time of the execution and delivery of the several instru-

ments, Florilla M. Ripley testifies that she witnessed the instruments, and that they were all executed at the same time and place.

But the appellant contends that the appellee is estopped, by the recital in the indenture of the 28th of August, from showing that the deed was executed on any other day than the 26th of August. The recital is, " being the same that the said James *deeded* to the said Joshua, August 26th, 1826." He contends that the word *deeded* means executed and delivered on that day. But this position is untenable. The word has no meaning known in the law, and there is no such verb as *to deed* in the language. It cannot, then, import the execution and delivery of a conveyance of land. It is merely bad grammar. It can mean nothing more than that James Wellman made a deed bearing that date.

It is also to be remarked, that the doctrine of the conclusive effect of recitals in deeds applies only to essential averments, and not to matters of mere description. The appellee might be estopped from saying that there was no deed, but not from denying that it was executed on a certain day, as its date might purport, because that is not a material part of the deed. *Com. Dig., Estoppel, (A 2 ;) Doughty* vs. *Fawn, Yelv.* 227, (*n.* 1.) If the date itself be not material, and the deed may be shown to have been executed on a different day, the party could hardly be estopped by a recital of the date.

We are, therefore, of opinion that the conveyance of the life estate to Joshua cannot be deemed to be an advancement, as it was in consideration of the support to be furnished by Joshua to his parents. But the conveyance of the remainder in fee was an advancement, as the only consideration for it was love and affection, and with the value of that the appellee must be charged. The sum is to be determined in the following manner. The value of the land at the time of the execution of the deed, and also its annual value, must be ascertained, and the duration

of the lives of James Wellman and his wife from the time of the execution of the deed. From the amount of the accruing income for each year as it becomes due, must be deducted the interest from the end of that year until the decease of James Wellman and his wife. ·

The amount ascertained by adding together the value of the income for each year, during the existence of the life estate, after discounting the interest, is to be deducted from the value of the land at the time of the execution of the deed, and the balance, if any, without interest, is the sum to be charged the appellee, as an advancement upon the settlement of his account in the court of probate.

The decree of the judge of probate must, therefore, be reversed, and the appellee charged with the value of the reversion of the life estate, to be determined on the principle above mentioned.

*Decree reversed.*